UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ZELDA L. STEWART,

        Plaintiff,

    v.                                              Case No. 23-CV-1036

SP PLUS CORPORATION,

        Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Zelda L. Stewart, appearing *pro se*, sues her former employer SP Plus Corporation ("SP Plus") for retaliation and discrimination based on race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). (Docket # 1.) SP Plus moves for summary judgment in its favor as to all of Stewart's claims. (Docket # 34.) For the reasons explained below, SP Plus' motion for summary judgment is granted and the case is dismissed.

## BACKGROUND

SP Plus manages and operates various parking facilities throughout the United States, including in the state of Wisconsin. (Declaration of Brian Doherty ("Doherty Decl."), Docket # 36-1, ¶ 4.) Stewart began her employment in August 2015 when SP Plus hired her to work as a valet at Froedtert hospital. (*Id.* ¶ 7.) In April 2017, Stewart was promoted to Lead Valet. (*Id.* ¶ 8.)

During her deposition, Stewart testified that she was demoted and terminated for two separate complaints she made. (Deposition of Zelda Stewart ("Stewart Dep."), Docket # 36-2 at 16–18.) The first incident of which Stewart complained involved one of the valet

employees she supervised, Javaier Thompson. (*Id.* at 22.) Stewart testified that on March 18, 2022, she was working as Lead Valet when she asked Thompson to move from one valet location to another. (*Id.* at 21–22.) Thompson refused and began calling Stewart racially derogatory names. (*Id.* at 21–22.) Stewart reported the incident to her supervisor, Karen Ribecky. (*Id.* at 22.) Stewart also reported to Ribecky and her senior manager that she felt "very uncomfortable" working with Thompson because of how "he exploded on [her] for asking him to a do simple task." (*Id.* at 23.) Despite her report, Stewart stated that her managers kept sending Thompson to work at the same valet doors where she was working. (*Id.*) Stewart subsequently filed a complaint with SP Plus' Chicago Human Resources Department on March 31, 2022. (*Id.* at 23, 27–28.) Though the parties dispute the timing and reason of Stewart's demotion, she testified that she was demoted on April 18, 2022, as a result of the March 2022 complaint that she filed against her managers. (*Id.* at 27.)

The second incident involves Stewart's complaints about her vacation time. (*Id.* at 18.) Stewart testified that on June 22, 2022, she asked Ribecky about taking a vacation because she had never taken one. (*Id.* at 41.) Ribecky, however, stated that Stewart had used all of her vacation time. (*Id.*) Stewart then asked how and when she used it, and Ribecky stated that Stewart had been paid for the time. (*Id.*) Stewart then emailed the Chicago office and asked if they could send her documentation of the vacations she took or when she was paid for them, but no one ever responded to her. (*Id.* at 42.) Ribecky and Andrew Weisman, senior manager and Ribecky's superior, eventually met with Stewart and walked her through her hours and timesheets from 2016-2022. (*Id.* at 43–44.) Stewart, however, was convinced that Ribecky had "st[olen]" her vacation time. (*Id.*)

On September 15, 2022, Weisman sent Brian Doherty, SP Plus' regional manager, a detailed email regarding Stewart's behavior over the previous months. (Defendant's Proposed Findings of Fact ("DPFOF"), Docket # 36-3 at 2–3.) The email highlighted some of Stewart's concerns and the issues Stewart had with management and her coworkers. (*Id.*) For instance, the email stated that Stewart continued to "harass" Ribecky about her vacation time and had done so consistently over the previous six months. (*Id.*) Weisman also stated that Stewart consistently had negative interactions with several of her coworkers and that had made scheduling difficult (*Id.* at 3.) Doherty felt that due to the contentious nature of Stewart's relationship with SP Plus managers, transferring to another facility was appropriate. (DPFOF ¶ 41.) Stewart was transferred to the 411 East Wisconsin building in October 2022. (*Id.* ¶ 43.)

Upon transferring to the 411 East Wisconsin building, Stewart's immediate supervisor became Joe Parise, and Parise's supervisor was Michael Sullivan. (Stewart Dep., Docket # 36-2 at 46.) Shortly after Stewart's transfer, she had a meeting with Doherty and Sullivan. (*Id.* at 48.) During the meeting, Stewart reiterated her belief that she had been "cheat[ed]" out of her vacation time and Doherty tried to explain SP Plus' position and vacation policy. (*Id.* at 49.) Doherty and Stewart also went through the years' previous timesheets and Doherty offered to compensate Stewart for her disputed vacation time. (DPFOF ¶ 40.) Stewart, however, felt that she was being offered something "to shut [her] up" because she had mentioned "hav[ing] the matter looked into outside of SP Plus[.]" (Stewart Dep. at 50.) Stewart testified that because she would not stop questioning SP Plus about her vacation time, they "conspired" to transfer her and to eventually "get rid of [her]." (*Id.* at 17–18.) Stewart also stated that Parise said "[she] was only moved downtown to get rid of [her]." (*Id.* at 74.)

3

Stewart's employment at the 411 East Wisconsin building proceeded without incident for the remainder of 2022. (Doherty Decl., Docket # 36-1, ¶ 18.) In January 2023, SP Plus' client, the owner of the 411 East Wisconsin building, requested Stewart expand her daily rounds to include an area of the facility called the Annex garage. (DPFOF ¶ 44.) Stewart was directed to walk through the garage periodically and to sweep and pick up paper; however, Stewart stated those duties were not what she was hired by SP Plus to do. (Stewart Dep. at 58.) Stewart also reported to Parise that she did not feel safe making rounds through the Annex garage; however, she did complete rounds intermittently despite not staying there her entire shift. (*Id.* at 59–60.) On January 26, Parise and Sullivan presented Stewart with a disciplinary warning because they believed she was not doing her job as directed. (DPFOF ¶ 46; *Id.* at 61.) Stewart refused to sign the warning because she argued she had been walking through the garage intermittently, telling them to "check the cameras." (Stewart Dep. at 63.) Stewart testified that she became upset but never shouted, yelled, or used expletives. (*Id.* at 64.)

According to Parise, Stewart became "irate," acted in a "threatening manner," and shouted expletives at Sullivan and Parise at a volume that could be heard by customers. (DPFOF ¶ 48, Docket # 36-3 at 9.) Parise reported that Stewart called him and Sullivan derogatory names and stated that she would contact news organizations in hopes that SP Plus would lose its clients. (*Id.*) Sullivan similarly stated that Stewart acted "extremely aggressive" towards him and said, "you don't want none of this" and "flex[ed]" at Parise. (*Id.* at 10.) Sullivan directed Stewart to clock out as her behavior was inappropriate. (*Id.*) Stewart stated that she refused because she had thirty minutes left for the day. (Stewart Dep. at 65.) Sullivan

stated that Stewart subsequently "stormed off" but returned a few minutes later to clock out. (Docket # 36-3 at 10.)

Later that evening, Stewart received a text message from Doherty stating that she was suspended pending further investigation into the incident. (*Id.* at 67.) On February 1, 2023, Stewart was terminated due to Parise's and Sullivan's statements about her behavior on January 26. (DPFOF ¶ 52; *Id.* at 69.) Stewart denies acting in the manner Parise and Sullivan described and instead alleges they "fabricated" the story to terminate her. (Stewart Dep. at 15.) Stewart alleges that she was terminated for filing the complaint with the office in Chicago and for complaining about her vacation time. (*Id.* at 17–18.)

## SUMMARY JUDGMENT STANDARD

The court will grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must

5

be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS[1]

Stewart alleges SP Plus discriminated and retaliated against her based on race in violation of Title VII. (Compl., Docket # 1.) Upon review of her complaint, Stewart appears to allege that she experienced both racial discrimination and retaliation when she was demoted from supervisor, transferred to the 411 East Wisconsin building, and subsequently terminated. SP Plus argues that Stewart's claims are untimely and fail on the merits. I will address each argument in turn.

### 1. Timeliness

SP Plus argues that Stewart's claims are time-barred because the complaint was not filed within the 90-day statutory period. Indeed, Title VII provides that a plaintiff must bring suit "[w]ithin 90 days of receipt of notice of final action taken by a department . . . or by the Equal Employment Opportunity Commission . . . ." 28 U.S.C. § 2000e-16(c). "The time limit is not flexible, even for pro se litigants, and a one-day delay is fatal." *Davis v. Browner*, 113 F. Supp. 2d 1223, 1226 (N.D. Ill. 2000).

---

[1] Stewart timely submitted her "Memorandum of Law" in opposition to SP Plus' motion on October 24, 2025. (Docket # 37.) On December 12, 2025, however, Stewart submitted a "Supplement" containing legal arguments. Because it was untimely and Stewart did not receive permission from the Court to file an additional brief, the supplemental arguments have not been considered.

Stewart received her Right to Sue notice from the EEOC on May 5, 2023, via the EEOC's online service portal. (Stewart Dep. at 20.) The 90-day deadline began running on May 5, 2023, when Stewart received the notice. *See Kinder v. Marion Cnty. Prosecutor's Office*, 132 F.4th 1005, 1009 (7th Cir. 2025). Stewart therefore had 90 days, or until August 3, 2023, to file her complaint. The complaint was filed and docketed, however, on August 4, 2023. Stewart argues the Court received the complaint on August 3, 2023, and the Court "used their 24 hour window" before opening the case. (Docket # 37 at 1.) But the date the Court received the complaint is marked by the "FILED" date stamped on the complaint and that date is August 4, 2023. *Robinson v. Doe*, 272 F.3d 921, 922–23 (7th Cir. 2001) ("The complaint is 'filed' . . . when the court clerk receives the complaint[.]"). There is no evidence indicating the complaint was received on August 3, 2023, as Stewart suggests. As such, the complaint was deemed "filed" on August 4, 2023. Stewart's complaint is therefore untimely.

Though the time limitations for Title VII actions are not jurisdictional and subject to equitable tolling, "equitable tolling is to be restricted and reserved only for situations in which the claimant has made a good faith error (e.g. brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time." *Jones v. Madison Service Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984) (citing *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 109 (2d Cir. 1978)); *see also Zipes v. Trans. World Airlines, Inc.*, 455 U.S. 385 (1982). Stewart has not provided any reasons for why she failed to meet the 90-day deadline. What's more, Stewart was also informed through her Right to Sue Notice that "[y]our right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days." (Docket # 1-1.) Stewart failed to meet this statutory mandate. As such, summary judgment is granted in favor of SP Plus.

## 2.   Racial Discrimination

Even if Stewart's complaint was timely, she fails to show that she was discriminated against because of her race. To prove a Title VII discrimination claim, "an employee must prove (1) that she is a member of a protected class, (2) that she suffered an adverse employment action, and (3) causation." *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). Racial discrimination must be a "motivating factor in the defendant's challenged employment decision." *Id.* (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 337 (2020)).

Stewart appears to abandon her claim that she suffered an adverse employment action on account of her race. Indeed, she testified during her deposition that she was *not* terminated due to her race. (Stewart Dep. at 15.) And Stewart has not identified any other employment action that was motivated by racial animus. Rather, a liberal reading of Stewart's response to SP Plus' motion for summary judgment seems to only focus on retaliation and SP Plus' failure to follow certain disciplinary measures throughout Stewart's employment. (*See* Docket # 37.) But there is no argument explaining how Stewart experienced racial discrimination. Nor is there any legal argument rebutting SP Plus' motion. Thus, Stewart's racial discrimination claim fails.

## 3.   Retaliation

Stewart also alleges she was retaliated against for engaging in a protected activity under Title VII. To prevail on summary judgment on a Title VII retaliation claim, a plaintiff must come forward with sufficient evidence for a reasonable jury to conclude that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) causation. *Lewis*, 36 F.4th at 761. Giving Stewart's complaint and deposition a liberal

8

construction, she alleges two complaints resulted in several adverse employment actions. First, she alleges her March 31 complaint to SP Plus' HR office resulted in her demotion, transfer to the 411 East Wisconsin Building, and her eventual termination. (Compl., Docket # 1 at 3–4; Stewart Dep., Docket # 36-2 at 16–17.) Second, she alleges she was transferred to the 411 East Wisconsin building and eventually terminated because of complaints about her vacation time. (Stewart Dep. at 17, 40–41.)

### 3.1    March 31, 2022 Complaint

Stewart alleges her March 31 complaint to SP Plus' HR office regarding her managers' lack of response to Thompson's racial discrimination led to her demotion, transfer, and eventual termination. Stewart states she was demoted on April 18, 2022, however, SP Plus contends Stewart was demoted one month prior, in February 2022, because employees reported Stewart had been disrespectful towards them. (DPFOF ¶ 21; Stewart Dep. at 27.) As part of the disciplinary action, Stewart's Lead Valet position was eliminated that month. (*Id.* ¶ 22; Docket # 36-2 at 39.)

To prove causation for a retaliation claim, a plaintiff must offer evidence "that a retaliatory motive was a but-for cause of the challenged employment action." *Lesiv v. Illinois Central R.R.*, 39 F.4th 903, 915 (7th Cir. 2022) (internal quotation omitted). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 352 (2013).

Though the parties dispute the timing of Stewart's demotion, the evidence suggests Stewart's demotion occurred before she filed her March 31 complaint. Indeed, after the incident with Thompson, Weisman emailed Lionell Perry, Froedtert's Director of Guest

9

Relations and Patient Logistics, on March 30, 2022, about the incident. Weisman stated that Stewart had difficulty with many of her coworkers and was written up one month prior for a negative interaction she had with a staff member. (Docket # 36-2 at 36–37.) Weisman stated that Stewart was "no longer in a supervisor role with SP+ as a result of this interaction." (*Id.*) SP Plus also submits a February 22, 2022, disciplinary warning stating that Stewart had acted disrespectful toward coworkers and therefore her supervisor position was being eliminated. (DPFOF ¶ 22; Docket # 36-2 at 39.) Though Stewart did not sign the written warning and stated she was unaware of it (Stewart Dep. at 37), the warning, together with Weisman's email, is sufficient evidence to suggest Stewart's supervisor position was in fact eliminated due to her negative interactions with coworkers before she filed the March 31 complaint. Stewart has not submitted any evidence to the contrary. Nor has Stewart complied with the local rules by submitting any materials, affidavits, or declarations opposing SP Plus' motion and evidence. *Scales v. Noonan*, 2022 WL 79847, at *1 (E.D. Wis. Jan. 7, 2020) (recognizing that while district courts may overlook a *pro se* litigant's failure to comply with the local rules they are not required to do so) (citing *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). Thus, even accepting that Stewart's demotion occurred in April 2022, Stewart submits no evidence that her March 31 complaint caused her demotion.

Additionally, the prolonged time between Stewart's March 31, 2022, complaint and her transfer to the 411 East Wisconsin Building in October 2022 suggests the two events were unrelated. The same can be said for Stewart's eventual termination in February 2023. This is especially so given that the record lacks any direct or circumstantial evidence of prolonged animosity toward Stewart. *See Lesiv*, 39 F.4th at 920. As such, even if her retaliation claim

10

was timely, Stewart has not produced sufficient evidence to permit a reasonable fact finder to find in her favor.

### 3.2 Vacation Time

Finally, Stewart argues that her persistent complaints about her vacation time caused her transfer and eventual termination. Complaining to management about losing vacation time or a discrepancy in the hours an employee is allotted vacation time, however, is not a protected activity under Title VII. A "[p]rotected activity" is "some step in opposition to a form of discrimination that the statute prohibits." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) (internal quotation omitted). Stewart provides no evidence that her complaints about vacation time related to her race, sex, or another form of discrimination. As such, if this claim were timely, it would fail for Stewart's inability to show she engaged in a protected activity.

### CONCLUSION

Stewart alleges that SP Plus violated her rights under Title VII. Though Stewart's complaint is untimely, the record evidence presented is also insufficient for a reasonable jury to find that SP Plus violated Stewart's rights. For these reasons, SP Plus' motion for summary judgment is granted and Stewart's complaint is dismissed.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that SP Plus' motion for summary judgment (Docket # 34) is **GRANTED**. The case is dismissed. The Clerk of Court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 3rd day of June, 2026.

BY THE COURT

NANCY JOSEPH
United States Magistrate Judge

12